### LESH v. FLORIDA POWER & LIGHT CO.

Docket No. 790053-EV(CP). Order No. 9074.

Florida Public Service Commission.

September 24, 1979.

Walter B. Dunagan, Daytona Beach, for the complainant.

Paul J. Bonavia, Miami, for the defendant.

Donald R. Alexander, Tallahassee, for the commission staff and the public generally.

The following commissioners participated in the disposition of this matter — Chairman ROBERT T. MANN, and Commissioners WILLIAM T. MAYO, GERALD L. GUNTER, and JOHN R. MARKS, III.

## BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated hearing examiner, P. Michael Ruff, held a public hearing on this matter in Deland on April 4, 1979.

By recommendation dated July 5, 1979, the hearing examiner has recommended the following disposition of the complaint filed herein —

Complainant, Charles E. Lesh, initiated this proceeding contesting a bill in the amount of $1,236.30 rendered to him by Florida Power and Light (FPL) for electricity consumed, but not paid for. The complainant alleges that FPL failed to conduct a meter test and otherwise failed to assist Mr. Lesh in determining the reason for an unexplained increase in electrical consumption in violation of Rules 25-6.59(1), 25-6.93(1), 25-6.94(1) and 25-6.104, F.A.C.

The point of service involved in the allegations is the complainant's residence, with service being provided through one meter on the exterior of his home. The contested bill consists of chargs for electricity used but not recorded on the meter as a result of copper wire "jumpers" admittedly installed by Mr. Lesh behind the meter; charges for unmetered electricity consumed in operation of a security light on the complainant's premises; and charges for investigating and correcting the unauthorized use of electricity. The dispute arose in 1977 several months prior to the period for which the complainant is being billed for unauthorized usage. The complainant's electric bill increased unexpectedly and after some discussion with the defendant, the defendant suggested that Mr. Lesh possibly had an internal wiring problem in his home since his meter had been tested within the past year.

The complainant thereupon, in September 1977, checked the amperage drawn by his residence by installing copper wire "shunts" behind his meter for purposes of attaching an ampmeter. He thereby discovered a short circuit condition in an underground electric line, replaced the meter and corrected that condition. FPL became aware in mid-October, 1977 of a sudden decrease in apparent consumption by the complainant starting with the September, 1977 billing period. Officials of the company finally inspected the meter in early January, 1978 and discovered the wire shunts still in place. A security light drawing unmetered electricity was discovered on this same occasion. Thereupon FPL submitted a bill to the complainant for consumption of unmetered electricity for the period of September to December 1977. The company did not so bill Mr. Lesh for December, 1977 and January, 1978, apparently because of the delay in inspecting the meter and discovering the unmetered power use. Additionally the complainant was billed the company's 72 kilowatt hour per month standard tariff charge for use of the unmetered security light from the date of its discovery back to the month after the complainant began occupying the premises as a customer. The complainant contended that the light was already installed when he arrived at the property in 1963.

There is no question that a diversion of current around the meter did occur. The complainant admitted installing the pertinent wire shunts and did not refute evidence propounded by FPL's expert witness that the installation did indeed prevent a substantial amount of current from being recorded on the meter. The complainant was aware that current flowed through the wire shunts, but professed a belief that the current was recorded on the meter when the meter was installed in its box.

Two methods were used in determining the estimated consumption of unmetered electricity during the above period. The historical consumption method is based on a review of the customer's recorded consumption for the months in question for the previous four years to arrive at an average consumption for the pertinent time. The wire chart method involves tests of wire "jumpers" of different sizes on actual meters and measuring of recorded consumption to arrive at a percentage of electricity which will be diverted by various types and sizes of wire. FPL's expert witness applied this chart method as though only two copper jumper wires had been used when the complainant in reality used four. Thus, any error in estimation of the bill based on the chart would be in the complainant's favor.

Upon a determination of the kilowatt hour consumption figure, the company applied the appropriate rate, fuel adjustment, sales tax and franchise charges for each month to arrive at the subject billing amount.

No evidence was presented to refute the accuracy of these methods of billing calculation.

The unmetered security light was discovered at the January, 1978 inspection of the complainant's meter, as discussed above. Mr. Lesh at that time informed the company that it had been installed prior to his occupation of the premises in 1963 and the company thereupon billed him for its use from that time. A company witness, the complainant's former wife, maintained however, that the complainant had installed the light, but did not specify when it was installed. No company witness gave any explanation for FPL's failure to discover this diversion for the approximate fifteen year period the company maintains it was in existence. Thus, the evidence is conflicting and will not support billing the complainant for past use of the light from 1963 to the time of its discovery. Such would not constitute a reasonable estimate of energy used for purposes of 25-6.104, F.A.C. Since the evidence on this facet of the dispute is inconclusive and since the complainant did not contradict the evidence of the consumption of energy attributable to the light, balanced by the company's failure to demonstrate that Mr. Lesh installed the light at a particular time and its failure to discover the diversion when its employees were on the premises monthly; a reasonable solution, is to require the complainant and defendant to each bear one half of the cost of electricity used by the light as shown in the company's estimate. Thus the complainant should pay for the most recent seven years usage of the light, at appropriate tariff rates for those years. Otherwise, there is no dispute as to the method in which FPL computed the charge for this diversion.

Pursuant to the defendant's approved tariff FPL may charge for extra expenses incurred as a result of unauthorized use of electric service or meter tampering. The responsibility for by-passing the meter has been established as discussed above and the charges associated with investigating and correcting that condition were shown to be reasonable, with the exception of a bonus paid to the employee discovering the diversion and a $29 charge for photographs of it. No justification for investigative charges attributable to the mere discovery and flat rate method of billing for the security light use was established, however.

Regarding the allegation that FPL was dilatory in investigating the original complaint of excessive billing and failed to test the meter, FPL established in an unrefuted manner that an investigation was conducted in April and May of 1977, within a reasonable time after receiving the complaint, that the meter had been tested within the year, and was tested twice more by January 1978 and found to be accurate. Further, the complainant's own testimony reveals that employees of FPL discussed his complaints and explained the additional billing for unauthorized use of energy on a number of occasions.

## SUMMARY

It is evident from a review of the entire record that, with the exception of those mitigating factors related to investigative charges and billing for the unauthorized use of the security light, the complainant failed to show by substantial competent, evidence that the defendant committed the rule violations alleged in his complaint.

## CONCLUSIONS

Accordingly, in consideration of the foregoing findings of fact, the competent, substantial evidence in the record and the candor and demeanor of the witnesses, the Examiner concludes that the complainant —

a) failed to establish by substantial, competent evidence that the disputed bill in the amount of $1,236.30 for electricity consumed without payment is not due and owed to the defendant, except as indicated in the second recommending paragraph below:

b) failed to establish by substantial competent evidence that the disputed bill was incorrectly or unreasonably calculated in violation of Rule 25-6.104, Florida Administrative Code;

c) failed to show that the defendant violated Rules 25-6.56(1), 25-6.93(1), 25-6.94(1), Florida Administrative Code, in its conduct of the investigation of the complainant's original excess billing complaint, as well as the ensuing electrical diversion investigation.

It is therefore recommended that the complaint of Charles E. Lesh against Florida Power and Light Company be dismissed.

It is further recommended that the deefndant be ordered to recalculate the subject bill so that the complainant will only be billed for the most recent seven years usage of the unmetered security light; so that he will not be billed for investigative costs attendant to finding and correcting the unmetered use of that light and so that he will not be billed for any bonus paid the defendant's employees for discovery and correction of the subject energy diversion or the costs of photographs attendant to the subject investigation.

We concur with the examiner, except as noted hereinbelow.

Exceptions to the examiner's recommended order have been filed by Florida Power & Light Company wherein it takes exception to two portions of the order. First, it objects to the recommendation that all charges incurred by FPL in discovering, correcting and billing for the current diversion associated with the security

light be disallowed. Next, it objects to the recommendation that FPL be permitted to collect backcharges for the unmetered security light for only the most recent seven years.

Having reviewed the complete record herein and the argument submitted by FPL, we find the exceptions are meritorious and that the recommended order should be modified to permit FPL to recover the investigative charges associated with the security light and to collect all charges for energy used but not paid for on the security light since 1963.

In reaching these conclusions, we first note that the defendant has been permitted to recover investigative costs associated with investigating and correcting the unauthorized consumption resulting from the wire jumpers on complainant's meter. Consistency requires that FPL also be allowed to recover the comparable charges for investigating and correcting the unmetered security light. Next, the evidence herein reflects an express acknowledgment by complainant that he had utilized the security light from 1963 to January, 1978 without paying for the energy consumed during that period of time. Further, the fact that FPL did not discover the unmetered security light earlier than 1978 in no way mitigates the amount of moneys owed by complainant or impairs the legal obligation of FPL to collect the underbilling.

Accordingly, we find the examiner's recommended order should be adopted as our final order except as modified hereinabove.

It is therefore ordered that the complaint of Charles E. Lesh against Florida Power & Light Company be and the same is hereby dismissed.

Commissioner Marks dissents in that he would approve the examiner's recomended order in toto.